# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

PENNY M.,

                                          Plaintiff,

        v.

                                                        8:20-CV-1334
KILOLO KIJAKAZI, ACTING                                 (ATB)
COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.

ARTHUR P. ANDERSON, ESQ., for Plaintiff
NATASHA OELTJEN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

On February 6, 2018, plaintiff filed an application for disability insurance benefits ("DIB"), alleging that she became disabled on November 26, 2014. (Administrative Transcript ("T.") 455, 523-26).  The claim was denied initially on April 10, 2018. (T. 455, 463-68).  Plaintiff requested a hearing, which was held on October 10, 2019 before Administrative Law Judge ("ALJ") Arthur Patane. (T. 409-22). Plaintiff testified at the hearing, accompanied by a non-attorney representative. (*Id.*) ALJ Patane issued an unfavorable decision on November 14, 2019 (T. 10-16), which

became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 20, 2020 (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity
> that [she] is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which
> [she] lives, or whether a specific job vacancy exists for [her], or whether
> [she] would be hired if [she] applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If [she] is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the

> [Commissioner] will consider [her] disabled without considering
> vocational factors such as age, education, and work experience …
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, [she] has the
> residual functional capacity to perform [her] past work. Finally, if the
> claimant is unable to perform [her] past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.* However, this standard is a very deferential standard of

review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.  **FACTS**

Plaintiff was 52 years old on the date of the administrative hearing.  (T. 412). She had completed school through the 12th grade, but did not graduate, nor did she obtain a GED.  (T. 415).  She lived with her husband.  (*Id.*).

Plaintiff was most recently employed as a janitor at SUNY Plattsburgh, having retired from that position in 2011 after twenty years.  (T. 412).  She testified that she was on "retirement disability" from the state, because she could no longer perform her job duties.  (*Id.*).  The disability precipitating plaintiff's retirement stemmed from a shoulder condition – she suffered an injury on the job in 2010, after which she had right shoulder surgery.  (T. 414, 416).  Since the surgery, plaintiff had experienced

4

difficulties with her right arm.[1]  (*Id.*).  Plaintiff testified that she could no longer reach, and had trouble gripping.  (T. 414).  Her right hand felt heavy "all the time," and her fingers were "always numb."  (T. 414, 416, 419-20).  At times, plaintiff had difficulty driving, and could only travel short distances.  (T. 418).  The swelling in her arm was exacerbated by reaching and performing housework.  (T. 419).  She did not cook, because she dropped items such as hot pans.  (*Id.*).

Plaintiff also stated that she had an upcoming surgery on her neck, due to increasing weakness in her arms.  (T. 417-18).  She had undergone "two knee surgeries in the past couple years," in addition to weight loss surgery.  (T. 418-19).  She continued to experience trouble walking.  (T. 419).

At the conclusion of the administrative hearing, which took place in October 2019, the ALJ pointed out that plaintiff's date last insured was in 2016, and requested that plaintiff's representative provide a post-hearing submission developing the record specific to the time period prior to that date.  (T. 421). In discussing this matter, representative described plaintiff's right arm/shoulder condition as an "ongoing issue," causing plaintiff continued limitations in, among other things, reaching and handling since her 2010 injury and subsequent surgery.  (T. 421).

## IV.   THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ found that plaintiff last met her insured status requirements for DIB on December 31, 2016.  (T. 12).  The ALJ found that plaintiff had the following severe impairments at step two: disc herniation at the

---

[1]Plaintiff testified that she was right-handed.  (T. 416).

L4-5 level of the lumbar spine; obesity; status-post left knee arthroscopy; and gastro-esophageal reflux disease ("GERD"). (*Id.*).  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*).

At step four, the ALJ found that, "through the date last insured," plaintiff could perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  (T. 13). Based on this RFC, the ALJ found that plaintiff could not perform any of her past relevant work. (T. 15).  However, at step five, the ALJ found that based on plaintiff's RFC, and considering her age, education, and work experience, she could perform other jobs which exist in significant numbers in the national economy. (T. 15-16).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1.   The ALJ's RFC determination is not based on any medical opinion. (Pl.'s Br. at 11-13) (Dkt. No. 20).

2.   The ALJ failed to consider the effects of plaintiff's obesity. (Pl.'s Br. at 13-14).

3.   The ALJ erred in rejecting the walking and standing limitations opined by plaintiff's primary care physician.  (Pl.'s Br. at 14-16).

4.   The ALJ erred in omitting an evaluation of plaintiff's right upper extremity impairment, and the limitations flowing therefrom.  (Pl.'s Br. at 16-18).

5.   The ALJ failed to incorporate and consider medical evidence from plaintiff's prior disability claim.  (*Id.*).

Defendant argues that the ALJ's decision was supported by substantial evidence, and

the complaint should be dismissed. (Def.'s Br. at 6-20) (Dkt. No. 23).  For the following reasons, this court finds that the ALJ's step two determination was not supported by substantial evidence, and remand is therefore warranted.

## VI.   MEDICALLY DETERMINABLE IMPAIRMENT

### A.   Legal Standards

In order to be found disabled, a claimant must show that she is unable to perform any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. §§ 404.1505(a), 416.905(a). "Consequently, only impairments that are 'medically determinable impairments' can be considered in the disability analysis." *Flower v. Comm'r of Soc. Sec.*, No. 6:16-CV-1084 (GTS), 2018 WL 895579, at *5 (N.D.N.Y. Feb. 13, 2018).

In order to qualify as a medically determinable impairment, an impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques.[2]  Therefore, a physical or mental impairment must be established by objective medical evidence[3]

---

[2]Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests.  20 C.F.R. §§ 404.1502(c), 416.902(c).

[3]Objective medical evidence means signs, laboratory findings, or both.  Signs mean one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.1502(f-g), 416.902(f-g).

from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921; §§ 404.1529, 416.929; *Woodard v. Berryhill*, No. 3:17-CV-1124, 2018 WL 3536084, at *4 (D. Conn. July 23, 2018) (internal quotation marks, citations and brackets omitted).  Furthermore, the evidence must "show the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).  The existence of a medically determinable impairment is not established by a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]"  *Id*.  A claimant bears the burden of establishing that he or she has a medically determinable impairment.  *Woodard v. Berryhill*, 2018 WL 3536084, at *4.

## B.   Application

Plaintiff argues, among other things, that the ALJ erred in omitting her right upper extremity condition from consideration at step two of the sequential evaluation process.  (Pl.'s Br. at 16-18).  In response, the defendant argues that the ALJ was not obligated to find that plaintiff's right upper extremity was a medically determinable impairment, much less a severe impairment, because this condition "did not appear limiting until after the relevant period."  (Def.'s Br. at 15).

"Under Title II, a period of disability cannot begin after a worker's disability insured status has expired." *Woods v. Colvin*, 218 F. Supp. 3d 204, 207 (W.D.N.Y. Nov. 3, 2016), citing SSR 83-10, 1983 WL 31251, at *8 (Jan. 1, 1983). In other words, "[i]t is well established that evidence of an impairment which reached disabling severity after the expiration of insured status, or which was exacerbated after such expiration, cannot be the basis for the determination of entitlement to a period of

disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired." *Ewing v. Astrue*, No. 5:11-CV-01418 (TJM), 2013 WL 1213129 *3 (N.D.N.Y. Mar. 22, 2013), citing *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  Thus, to defendant's point, it would have been proper for the ALJ to decline consideration of plaintiff's right upper extremity condition if it was, in fact, dormant until after plaintiff's date last insured.

The ALJ's step two analysis in this case was incredibly brief.  As previously noted, the ALJ found that plaintiff's disc herniation at the L4-5 level of the lumbar spine; obesity; status-post left knee arthroscopy; and GERD were all medically determinable impairments which significantly limited her ability to perform basic work activities.  (T. 12).  The ALJ did not provide any explanation for his conclusion, nor justification for the omission of any other medical conditions.  Plaintiff's right upper extremity was entirely absent from the limited discussion.  (*Id.*).  In fact, there is no meaningful reference to plaintiff's right upper extremity condition throughout the ALJ's decision.  Although the ALJ identified plaintiff's testimony as to "neck and arm problems," he apparently dismissed these statements as irrelevant because said impairments "were limiting after [plaintiff's] date last insured."  (T. 14).

Plaintiff's date last insured was December 31, 2016. (T. 12).  The record reflects that, in 2011, plaintiff underwent "SLAP"[4] repair surgery to her right shoulder, subsequent to a work-related injury.  (T. 807-09).  Several months after the surgery, plaintiff sought treatment for numbness and "altered sensation" in her right hand.  (T.

---

[4]A SLAP tear is an injury to the labrum of the shoulder, which is the ring of cartilage that surrounds the socket of the shoulder joint. https://orthoinfo.aaos.org/en/diseases--conditions/slap-tears.

792).  As of September 2012, plaintiff continued to report ongoing pain in her right shoulder, with inconsistent numbness throughout her right hand.  (T. 787).  She continued to treat with her orthopedic surgeon, Daniel P. Bullock, M.D., in 2012 and 2013, with complaints of right shoulder pain and decreased range of motion.  (T. 785, 786).  In September 2013, Dr. Bullock diagnosed plaintiff with a right shoulder strain versus contusion after a fall, indicating that plaintiff seemed to have aggravated her shoulder injury.  (T. 783).  Plaintiff continued to exhibit "some limitations in abduction and forward flexion" on the right side in October 2013.  (T. 781).  Dr. Bullock prescribed plaintiff physical therapy, and indicated that he would see her back on an as-needed basis.  (*Id.*).  He also suggested that plaintiff had reached maximum medical improvement with respect to her shoulder, for a "total percentage loss of use of 50%[.]" (T. 786).

Plaintiff continued to complain about her right upper extremity pain during the relevant period of alleged disability; namely between November 26, 2014, her alleged onset date, through her date last insured of December 31, 2016.  At her annual examination with her primary care physician, Zbigniew Wolczynski, M.D., on December 1, 2014, plaintiff reported right shoulder pain and was observed to have "limitation with movement of the right upper extremity."  (T. 688-89).  Included in Dr. Wolczynksi's progress note was a "problem list" of diagnoses, including "disorder of shoulder" and "neck pain."  (T. 688).  Plaintiff's medication list included acetaminophen with hydrocodone.  (*Id.*).

On October 1, 2015, plaintiff reported to Dr. Wolczynski that she was

experiencing tingling in her right arm and hand; however, her upper extremities were observed to be "normal" upon examination.  (T.  690-92).  She was also observed to have developed a "hard growth" on her right upper arm.  (T. 693).  The lesion was excised on November 23, 2015. (T. 666-67).  Then, on July 12, 2016, plaintiff reported "chronic right shoulder pain" to Dr. Wolczynski, who upon examination noted plaintiff's "discomfort with movement of the right upper extremity."  (T. 701-02).  She was advised to continue with her pain medicine as needed.  (T. 703).

On September 10, 2016, plaintiff sought treatment in the emergency department for complaints of right shoulder pain.  (T. 764).  Plaintiff exhibited shoulder pain with palpation, and full range of motion with some discomfort.  (T. 766).  She was discharged with instructions to follow up with her primary care physician for physical therapy, and a prescription for pain medication.  (*Id.*).

Plaintiff's right upper extremity condition was, arguably, complained about and treated on a more frequent basis after her date last insured.  However, the relevant medical records generated after December 2016 do not contradict plaintiff's position that this was an ongoing condition throughout the relevant period of alleged disability. For example, plaintiff consistently reported to multiple providers that she had experienced, and continued to experience, intermittent pain and numbness in her right upper extremity since her 2011 surgery.  (T. 638, 640, 708, 711, 714).  "[E]vidence of an applicant's condition subsequent to the expiration of her insured status 'is pertinent evidence in that it may disclose the severity and continuity of impairments existing before [the date of her insured status expires].' " *Mattison v. Astrue*, No.

07-CV-1042(VEB), 2009 WL 3839398 *5 (N.D.N.Y. Nov. 13, 2009) (citation omitted); *see also Patricia S. v. Kijakazi*, No. 3:20-CV-01609, 2022 WL 819561, at *3 (D. Conn. Mar. 18, 2022) (When post-[DLI] medical evidence indicates 'a continuity of [ ] problems commencing well before the [DLI],' 'implie[s]' as much, or there is an actual retroactive diagnosis in the record, an ALJ is 'obligated . . . to explore the possibility that the diagnoses applied retrospectively to the insured period' and fill any gaps in the record.").

Although this court stops short of concluding as a matter of law if or when plaintiff's right upper extremity condition became a medically determinable impairment, the ALJ's reason for omitting the condition at step two, without further explanation, is at odds with the longitudinal record.  As discussed above, there is at least some objective evidence of record suggesting that plaintiff's right upper extremity condition was a diagnosed and established impairment prior to December 2016. Moreover, Dr. Wolczynski opined in the only medical opinion of record that, prior to plaintiff's date last insured, she was limited to reaching, handling, fingering, and feeling for less than 1/3 of the workday.  (T. 884).  In light of the foregoing, the court cannot conclude that the ALJ's general statement dismissing plaintiff's upper extremity condition as irrelevant was the result of proper application of the correct legal principles, nor supported by substantial evidence.

An error at step two may be harmless if the ALJ identified other severe impairments, proceeded through the remainder of the sequential evaluation, and specifically considered all severe and non-severe impairments during subsequent steps

of the process.  S*ee Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

However, the ALJ's error in this case stemmed not from a step-two severity conclusion,

but from the conclusion that plaintiff's right upper extremity condition was not a

medically determinable impairment.

"[T]he step-two harmless error doctrine is inapplicable to a determination that an

impairment is not medically determinable." *Penny Lou S. v. Comm'r of Soc. Sec.*, No.

2:18-CV-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019). "Th[e] distinction

[between an ALJ's determination that an impairment is not severe and her

determination that an impairment is not medically determinable] is significant because

an ALJ may credit a claimant's statements about her symptoms and functional

limitations only if the impairment to which they relate is medically determinable."

*Cooper v. Comm'r of Soc. Sec*., No. 17-CV-1058, 2019 WL 1109573, at *5 (W.D.N.Y.

Mar. 11, 2019) (where ALJ's finding that plaintiff's condition was not a medically

determinable impairment was not supported by substantial evidence, harmless error

analysis did not apply and remand was warranted).  *See* SSR 12-2P, 2012 WL 3104869

*5 (July 25, 2012) ("*Once a [medically determinable impairment] is established*, we

then evaluate the intensity and persistence of the person's pain or any other symptoms

and determine the extent to which the symptoms limit the person's capacity for work."

(emphasis added)); *see also Lauren A. v. Saul*, No. 8:18-CV-0244 (TWD), 2019 WL

4242248, at *7 (N.D.N.Y. Sept. 6, 2019) (ALJ's failure to find impairment medically

determinable was not harmless and warranted remand); *Childs v. Colvin*, No. 1:14-CV-

462, 2016 WL 1127801, at *3-4 (W.D.N.Y. Mar. 23, 2016) (ALJ's failure to find

claimant's schizoaffective disorder was a medically determinable impairment "constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application"); *Showers v. Colvin*, No. 3:13-CV-1147 (GLS/ESH), 2015 WL 1383819, *8 (N.D.N.Y. Mar. 25, 2015) ("Since [the ALJ] found that Showers's claimed personality disorder, depression and anxiety were not medically-determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent steps or when formulating Showers's residual functional capacity.").

Here, the ALJ's deficient step two analysis impacted the subsequent steps of the disability determination process because once the ALJ found that plaintiff's right upper extremity condition was not medically determinable, he was not required to consider it in determining plaintiff's RFC.  *See Penny Lou S.*, 2019 WL 5078603, at *8 (error in finding condition was not medically determinable impairment "impact[s] the subsequent steps of the disability determination process because, once the ALJ [finds] the impairment to be not medically determinable, he [is] not required to consider it in determining Plaintiff's RFC").  This is especially concerning, to the extent the ALJ concluded plaintiff had the residual functional capacity to perform the full range of light work, without considering the impact of any potential non-exertional limitations stemming from plaintiff's right upper extremity.  *See* SSR 83-14 ("[M]any unskilled light jobs . . . require gross use of the hands to grasp, hold, and turn objects.  Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise

found functionally capable of light work.").

In sum, remand is warranted in this matter because the ALJ's conclusion at step two was not supported by substantial evidence.  Accordingly, this matter should be remanded in order for the ALJ to examine, *inter alia*, whether plaintiff's right upper extremity condition was a medically determinable impairment prior to plaintiff's date last insured, whether it was severe or non-severe in nature, and the limiting effects it may have on her RFC. The court does not address the plaintiff's remaining arguments "because, after evaluating the medical and diagnostic evidence and applying the de minimus standard," the ALJ may come to an alternative conclusion at step two, and consequently incorporate his findings into the remaining steps in the evaluation process. *Burgos v. Berryhill*, No. 3:16-CV-1764, 2018 WL 1182175, at *3 (D. Conn. Mar. 7, 2018) (remanding matter where ALJ failed to address, and reconcile, evidence of record suggesting that plaintiff's back pain constituted a medically determinable impairment).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: August 31, 2022

Andrew T. Baxter
U.S. Magistrate Judge